# YOUNGBLUTH et al,
*Appellant,*
*v.*
# PEOPLES et al,
*Respondents.*

## (No. A7705-06620, CA 15399)

622 P2d 1144

Bernard Jolles, Portland, argued the cause for appellant. On the briefs were William B. Aitchison, Larry N. Sokol, and Jolles, Sokol & Bernstein, P.C., Portland.

L. M. Schouboe, Portland, argued the cause for respondent Bernice Dorothy People. William Hallmark, Portland, argued the cause for respondent Donald Dean Widner. With them on the brief were Schouboe, Marvin & Furniss, Margaret H. Leek Leiberan, and Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

Plaintiff brought this action to recover damages for personal injuries sustained in an automobile accident.

Shortly after 5:00 p.m. on September 24, 1976, defendant Dorothy Peoples was driving her car on Interstate 5 in Portland when one of her tires went flat. She was driving in the left-hand lane of the three northbound lanes, and, because she felt the traffic was too heavy, she did not attempt to pull over to the right shoulder of the freeway. Shortly after Peoples stopped, defendant Donald Widner parked his pickup truck behind her to render assistance. Widner got out of his truck, had a brief conversation with Peoples, and then ran to the right side of the freeway to flag traffic. Shortly thereafter, plaintiff's car rammed into the rear of Widner's pickup causing plaintiff serious injuries.

In his complaint, plaintiff alleged defendants were negligent in stopping their vehicles on a controlled access highway, in parking their vehicles in the left-hand lane when it was practicable to move to the right shoulder, and in failing to adequately warn oncoming motorists of the impending danger. Defendants denied any negligence on their part. They affirmatively alleged plaintiff himself was negligent in operating his car at an excessive speed, in failing to maintain a proper lookout and proper control, and in driving while under the influence of intoxicating liquor. The jury returned a verdict finding plaintiff 51% negligent.

Plaintiff appeals from the judgment of dismissal, alleging the trial court erred: (1) by denying plaintiff's motion in limine to exclude evidence that empty malt liquor bottles were found in plaintiff's car; (2) by allowing into evidence testimony that empty malt liquor bottles were found in plaintiff's car; (3) by allowing a police officer to testify that the empty malt liquor bottles were "fresh empties"; (4) by denying plaintiff an opportunity to inform the jury as to a fact of which the court had previously taken judicial notice; (5) by refusing to allow into evidence a

motion picture of plaintiff's activities depicting his disabled condition;[1] and (6) by making repeated comments in the presence of the jury in a manner indicating disapproval of plaintiff's counsel. We affirm.

■   Plaintiff filed his motion in limine in reliance on *Christianson v. Muller,* 193 Or 548, 239 P2d 835 (1952), which holds that evidence of the presence of intoxicating liquor containers is inadmissible to prove the driver was intoxicated in the absence of some other evidence that the driver was under the influence of liquor. The record indicates the trial court did not deny plaintiff's motion as claimed, but rather reserved ruling on the matter until trial. Under the standard stated in *Christianson,* the admissibility of testimony that malt liquor bottles were found in plaintiff's car depended on whether there was any other evidence to show plaintiff was intoxicated. It appears from the record that counsel for defendant Peoples assured the court that additional evidence of intoxication would be produced. The court's decision to reserve ruling on the question, was within its discretion.

■   As part of his case in chief, plaintiff called as a witness the police officer who investigated the accident. On cross-examination, the officer was asked what he observed inside plaintiff's car. An objection was entered based upon the motion in limine. The objection was overruled, whereupon the officer stated that he observed a six-pack of malt liquor with five of the bottles empty in the car. Plaintiff assigns as error the admission of this testimony. We find no error. Prior to putting the police officer on the stand, plaintiff called defendant Widner as an adverse witness. On direct examination plaintiff's counsel asked Widner about the beer bottles, and Widner answered that he saw them scattered around plaintiff's car. Plaintiff thereby waived any objection to the police officer's testimony on this point.

When the officer testified that he had seen the malt liquor bottles in the car, he also stated that the notes he had taken during the investigation indicated the bottles

---

[1] This assignment of error relates solely to the issue of damages. Because we affirm the judgment of dismissal, we need not discuss whether it was error to exclude the motion picture.

were "fresh empties." Plaintiff's counsel objected, contending there was no foundation that the officer, or anyone, could tell whether the bottles were "fresh or not fresh." The court overruled the objection, and the examination continued:

"MR. LANG: Q Now, when you say 'fresh', what do you mean, Officer? Will you characterize for the jury so they can understand what you are saying?

"A Ah, I -- when I noted fresh, I meant had recently been emptied.

"Q What could you see about the bottles that led you to that -- that conclusion?

"A I don't have a picture of these bottles in my mind. It's been two years and 11 months, but I would have based that on the probability of maybe slight amount of beverage left in the bottle, liquid on the bottle, in the bottle not having dried and getting glassy yet, just the look they have been freshly emptied. That is how I would base it.

"Q In the course of your duties as a police officer, is this something that is not unusual for you to observe, of bottles?

"A I observe them quite often.

"Q Okay. And do you on those occasions in your -- as a police officer, try to make a determination or form an opinion as to whether they are freshly emptied or not freshly emptied?

"A That is a part of my duties."

Plaintiff objects to this testimony on the alternative grounds that it constitutes an inadmissible opinion by a lay witness, it relates to a subject not proper for expert testimony, and, even if the subject is proper for expert testimony, the officer was not qualified as an expert.

We doubt that the art of examining beer bottles has developed to such a point as to require or allow expert testimony for the purpose of determining whether, at a particular time, they had been "freshly emptied." In any event, no one seriously argues here the officer was testifying as an expert, and we will assume he was not.

Wigmore suggests the only purpose of the opinion rule is to eliminate superfluous testimony. Rather than having a hard and fast rule prohibiting opinion, it should simply be left to the court's discretion to screen out opinions

in order to save time, avoid confusion of issues, and prevent mere preponderance of numbers and influential names from influencing the verdict. 7 Wigmore, Evidence, §§ 1918, 1929 (Chadbourn rev. 1978). The following test and commentary are advanced for receipt of opinions by lay witnesses:

"The second group of persons to whom the opinion rule has to be applied (§ 1918 *supra)* includes those who concededly have *no greater skill* than the jury in drawing inferences from the kind of data in question. Such a witness' inferences are inadmissible when the jury can be put into a position of equal vantage for drawing them--in other words, when *by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion.*

"* * * It is in the [rigid] application of this test that the opinion rule really breaks down, as an aid in the investigation of truth. In the vast majority of rulings of exclusion, the data observed by the witness could not, in any liberal and accurate view, be really reproduced to the jury by the witness' words and gestures. The error of the judges consists in giving too much credit to the possibility of such reproduction. What is chiefly wrong is by no means the test itself, but the illiberal and quibbling application of it." 7 Wigmore, Evidence 32-33, § 1924 (Chadbourn rev. 1978) (emphasis in original); *Cf. In re Estate of Cruson,* 189 Or 537, 221 P2d 892 (1950).

■        In the present case one might wonder whether the officer's testimony that the bottles were "fresh empties" was even an opinion as opposed to an observation.[2] Did the

---

[2] Wigmore argues there is no clear distinction between "opinion" and "fact."

"* * * [A]s soon as we come to analyze and define these terms for the purpose of that accuracy which is necessary in legal rulings, we find that the distinction vanishes, that a flux ensues, and that nearly everything which we choose to call 'fact' either is or may be only 'opinion' or inference. * * *

"* * * 'It is true that even the simplest sensations involve some judgment; when a witness reports that he saw an object of a certain shape and size, or at a certain distance, he describes something more than a mere impression on his sense of sight, and his statement implies a theory and explanation of the bare phenomenon. When, however, the judgment is of so simple a kind as to become wholly unconscious, and the interpretation of the appearances is a matter of general agreement, the object of sensation may, for our present purpose, be considered a *fact* * * *. The essential idea of *opinion* seems to be that it is a matter about which doubt can reasonably exist, as to which two

officer *observe* that the bottles contained some residue, were not yet dry or glassy, and from those observations form an *opinion* they had been freshly emptied? Or did he observe they had been freshly emptied and merely provided some rational support for that observation at a later time? Any attempt to answer these questions definitively would indeed be quibbling. The officer's statement allowed the jurors to comprehend the situation more fully than they would have from verbalization of the underlying data. The court did not abuse its discretion by allowing the testimony.

■    Plaintiff next assigns as error a ruling by the trial court which prevented his counsel from commenting on a matter which had been judicially noticed. During trial plaintiff sought to introduce evidence that, prior to 1974, the posted speed on the highway was 70 miles per hour. An objection by defendants was sustained. Plaintiff made an offer of proof during which the prior speed was judicially noticed. The record shows judicial notice was taken solely to expedite the offer of proof. Plaintiff does not assign as error the court's ruling on defendants' objection. There was no error.

■    Finally, plaintiff contends the trial court committed error by making remarks directed at plaintiff's counsel. These remarks at most demonstrate impatience on the part of the trial court. None of the remarks was directed to the merits of plaintiff's case or any matter in issue. There is nothing in the record which would justify reversal.

Affirmed.

---

persons can without absurdity think differently. The existence of an object before the eyes of two persons would not be a matter of opinion, nor would it be a matter of opinion that twice two are four. But when testimony is divided, or uncertain, the existence of a fact may become doubtful, and, therefore, a matter of opinion.'" 7 Wigmore Evidence 14-15, § 1919 (Chadbourn rev. 1978), *quoting* Lewis, Influence of Authority in matters of Opinion 1 (1849).

"* * * [I]f we prefer the suggestion * * * that the test is whether 'doubt can reasonably exist,' then certainly it must be perceived that the multiple doubts which ought to exist would exclude vast masses of indubitably admissible testimony. * * * It is impossible, then (supposing it were desirable), to confine witnesses to some fancied realm of 'knowledge' or 'fact' and to forbid them to enter the domain of 'opinions' or inferences. There are no such contrasted groups of certain and uncertain testimony, and there never can be." 7 Wigmore, *supra* at 16.